THELMA POPULIAS GORDON,, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Gordon v. Commissioner
Docket Nos. 26044-92, 5088-93
United States Tax Court
T.C. Memo 1994-330; 1994 Tax Ct. Memo LEXIS 338; 68 T.C.M. (CCH) 121; July 20, 1994, Filed *338 Decisions of no deficiency for 1990 and of a deficiency and penalty in the amount determined for 1991 will be entered. Thelma Populias Gordon, pro se. For respondent: Michael A. Pesavento. COHEN
COHEN
MEMORANDUM FINDINGS OF FACT AND OPINION COHEN, Judge: Respondent determined deficiencies of $ 1,126 and $ 806 in petitioner's Federal income taxes for 1990 and 1991, respectively. Respondent also determined an accuracy-related penalty of $ 161 under section 6662(a) for 1991. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. Respondent now concedes that there is no deficiency due from petitioner for 1990, but petitioner claims an overpayment. The issues for decision are whether petitioner is entitled to certain theft loss deductions and whether she is liable for the penalty for 1991. FINDINGS OF FACT Petitioner resided in Louisiana at the time she filed her petition. During the years in issue, petitioner's occupation was part-time bookkeeper and real estate sales. In about 1975, petitioner acquired an interest in certain real property *339 in Louisiana. On September 1, 1979, petitioner entered into a Lease of Commercial Property (Net), whereby the real property was leased to Road Rangers Country Junction, Inc., for a term of 30 years at a monthly rental of $ 2,400. On September 27, 1979, petitioner executed a collateral mortgage on the property, to First Guaranty Bank, securing the amount of $ 125,000. On November 1, 1981, petitioner executed a Lease of Commercial Property (Net), whereby she leased to Road Rangers Country Junction, Inc., a three-bay mechanic shop and truck wash on a certain portion of the real property for a period of 15 years at $ 2,000 per month. On May 6, 1985, petitioner filed a charge of discrimination with the Equal Employment Opportunity Commission arising out of her employment with B.P. Oil Corporation. On or about October 31, 1985, she filed a bankruptcy petition in the U.S. Bankruptcy Court for the Eastern District of Louisiana. On or about November 25, 1985, Claude R. Smith was appointed bankruptcy trustee. Petitioner was granted a discharge in bankruptcy on or about March 19, 1986. On August 27, 1986, petitioner filed a civil action against B.P. Oil Corporation, alleging various *340 employment law claims and causes of action in tort under Federal and Louisiana law. On December 19, 1986, petitioner's employment was terminated. Over petitioner's objection, the bankruptcy trustee secured a determination that petitioner's claim against her employer was an asset of the estate. On February 28, 1986, an offer to purchase the real property for $ 350,000 was sent to the trustee in bankruptcy. The offer was contingent on the ability of the purchaser to secure certain financing and other terms. The offer was acceptable to petitioner. Sale of the property, however, did not occur. In late 1986, the trustee sought authority to abandon the real property. Over petitioner's objection, the property was abandoned by the trustee and foreclosed upon by the mortgage holder, T.H. Davidge, in 1987. Petitioner's claim against B.P. Oil Corporation was settled by the bankruptcy trustee for $ 40,000. The funds received by the bankruptcy trustee were used to pay the Internal Revenue Service and other creditors of petitioner. On her individual income tax return for 1990, petitioner reported gross income of approximately $ 6,200. On Schedule C, she claimed a loss of $ 213,220.30 *341 that was described as "Fraud in U.S.D.C. and Bankruptcy Court, N.O." On the second page of Schedule C, she explained that the bankruptcy judge "fraudulently 'abandoned' property instead of selling property as agreed to by Bankrupt which would have taken care of these losses." Although no tax was withheld from petitioner's earnings during 1990, she claimed a deduction for Federal income tax withheld of $ 1,090.22, described as "1989 withheld illegally". On petitioner's Federal income tax return for 1991, petitioner reported income of approximately $ 10,900. She claimed a loss of $ 208,659.13, stating "See 1990 return". Although no tax had been withheld from her earnings, she claimed a deduction of $ 1,090, plus interest, for Federal income tax "withheld illegally 1989". On Schedule A, she claimed a "Loss in theft from Title 7 litigation by Bankruptcy" in the amount of $ 44,297.99. Attached to her return was a Notice of Filing of Final Account of Trustee in the bankruptcy proceeding dated July 17, 1991. The amount claimed on Schedule A was the difference between the total receipts by the trustee shown on his accounting and the final distribution to petitioner. OPINION For 1990, *342 petitioner contends that she is entitled to an overpayment attributable to "illegal" application by respondent of amounts withheld from her salary during 1988. Apparently, she first claimed these amounts on her 1989 return and carried them over to 1990 and 1991. Respondent asserts that the amounts were properly applied to petitioner's liability for earlier years. Petitioner has the burden of proof on all issues in this case. Rule 142(a). The record does not disclose petitioner's actual tax liability for 1988 or 1989, the withholding of taxes during 1988, or the application of withheld taxes to liability for other years. No year prior to 1990 is before the Court. We cannot determine an overpayment by petitioner for 1990. Petitioner contends that she sustained the losses claimed on her returns for 1990 and 1991 due to fraud initiated by T.H. Davidge, who had unsuccessfully sought to purchase the real property from her in 1984 and who subsequently acquired the note and mortgage she executed in favor of First Guaranty Bank. She contends that the bankruptcy trustee and judges and B.P. Oil Corporation all joined in a conspiracy to defraud her of her property. She contends that *343 the payments that she made on the bank loan commencing in 1979 were all stolen from her. Petitioner's evidence consists of her testimony and various documents concerning the real property and the bankruptcy. The most that can be said from these documents is that petitioner was consistent in her claims that her assets were being appropriated. All of the proceedings occurred under color of law. Petitioner sincerely believes that she was a victim of theft. However, she has not established a loss that is deductible on her tax returns for the years in issue. Essentially, she is seeking to deduct the income that she would have received if the property had been sold and if she had received the proceeds of settlement of her lawsuit against her former employer. The amounts claimed, however, cannot be deducted because she did not receive and report income in the amounts now claimed as deductions. The law is clear that a failure to realize anticipated income is not deductible. As the Supreme Court succinctly stated in , "Nothing * * * indicates that Congress intended to allow petitioner to reduce ordinary *344 income actually received and reported by the amount of income * * * [she] failed to realize." See also , affg. ; , affd. without published opinion ; . Petitioner testified that she did not seek professional advice when she claimed losses on her tax returns for the years in issue. Section 6662 imposes a penalty equal to 20 percent of an underpayment of tax that is attributable to negligence or disregard of rules or regulations. Under the circumstances, we must sustain respondent's determination of this penalty for 1991. Although we are not unsympathetic to petitioner, the injuries perceived by her do not give rise to deductions or to relief in this Court. Due to respondent's concession, Decisions of no deficiency for 1990 and of a deficiency and penalty in the amount determined for 1991 will be entered.